FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 18 2010

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

GLENN WEIGEL, Individually and as
Co-Personal Representative of the Estate
of BRUCE JAMES WEIGEL; and
DAVID WEIGEL, Individually and as
Co-Personal Representative of the Estate
of BRUCE JAMES WEIGEL,

Case No. 04-CV-355-J

        Plaintiffs,

        vs.

JOHN COX, JOHN K. BROAD, and
DEVAN HENDERSON,

        Defendants.

## ORDER DENYING MOTIONS TO EXCLUDE TESTIMONY AND FOR SUMMARY JUDGMENT

This matter comes before the court as a result of the parties' cross-motions to exclude

as unreliable expert testimony offered by the other side and Defendants' motion for summary

judgment in their favor. Defendants seek to exclude trial testimony offered by Plaintiffs of

Dr. Stephen Cina, the pathologist who performed the autopsy of Bruce Weigel. Plaintiffs

opposed this motion, and in turn moved to exclude the testimony of two defense experts,

Christopher Lawrence and Dr. Vincent Di Maio. Defendants also contend that, without their expert witnesses, Plaintiffs will be unable to show a genuine issue of material fact, and summary judgment should be entered in Defendants' favor.

The Court held a two-day hearing on these issues on March 4 and 5, and closing arguments on March 11. Based on the evidence and arguments presented by the parties, the Court finds that Drs. Cina and Di Maio, as well as Mr. Lawrence, should be permitted to testify at trial.

## FACTS

The basic facts of this case have been discussed extensively throughout these proceedings. *E.g.*, *Weigel v. Broad*, 544 F.3d 1143, 1147-49 (10th Cir. 2008). In short, Bruce Weigel collided with the rear of Trooper Broad's patrol vehicle while both were traveling northbound on Interstate 25. Following the collision, Mr. Weigel's car went through the median and came to a stop on the right shoulder of the southbound lane. Trooper Henderson was following both colliding vehicles in his patrol car and stopped at the accident scene.

The troopers approached Mr. Weigel's car and asked him about the accident. They reported smelling alcohol on his breath. Mr. Weigel agreed to take a field sobriety test. As Trooper Henderson was walking Mr. Weigel to his patrol car across the intersection, he noticed a van approaching and told Mr. Weigel to stop. Mr. Weigel continued to cross, and

2

despite an additional warning, ran in front of the van. He was struck by one of the van's side mirrors.

Trooper Henderson went after Mr. Weigel, tackled him, and brought him to the ground. After a significant struggle, Mr. Weigel was face down on the ground, with Troopeer Broad on his upper body and applying at least one knee, trooper Henderson straddling Mr. Weigel's upper thighs and buttocks and holding his arms, and a bystander on his legs. Another bystander bound Mr. Weigel's feet, and he was handcuffed. Trooper Henderson returned to his patrol vehicle briefly, and returned to the scene of the struggle. When he returned to the scene, Trooper Broad told him that Mr. Weigel had stopped breathing. The troopers rolled Mr. Weigel on his back and found his heart had stopped. Attempts to revive him were unsuccessful.

## *DISCUSSION*

Admission of expert testimony is governed by Federal Rule of Evidence 702, which was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Supreme Court requires district courts to act as "gatekeepers," ensuring that expert testimony is reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Daubert*, 509 U.S. at 509. Nevertheless, the proper evidentiary standard is not infallibility; experts are humans, not robots. *See, e.g., Mitchell v. Gencorp Inc.*, 165 F.3d 778,

3

781 (10th Cir.1999) ("The plaintiff need not prove that the expert is undisputably correct."). The Court is charged with the task of ensuring that the expert's opinion is based in sound reasoning and methodology, and that it is valid given the particular facts of a case. *U.S. v. Gabaldon*, 389 F .3d 1090, 1098 (10th Cir.2004).

Rule 702 itself sets forth several bases for evaluating the testimony. Foremost among them is the requirement that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The rule also requires the Court to assess whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." In addition, courts have found other factors to be relevant in determining whether expert testimony may be admitted. For example, in *General Electric Co. v. Joiner*, the Supreme Court explicitly permitted a court to "conclude that there is simply too great an analytical gap between the data and the opinion proffered." 522 U.S. 136, 146 (1997).

Because this case involves cross-motions to exclude expert testimony, it is important to stress that it is not the Court's task to assess which expert is "right." The proper analysis involves only the admissibility of the evidence, not the weight—and the two are distinct concepts. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000). "Vigorous

4

cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Furthermore, the issue before the Court involves only the admissibility of the expert testimony pursuant to Rule 702 and *Daubert*. By ruling as it does, that the testimony should not be excluded pursuant to this authority, the Court is making no ruling or finding of admissibility on any other basis.

### Christopher Lawrence

The easiest witness to discuss is Mr. Lawrence. Plaintiffs object to any medical testimony Mr. Lawrence might offer, correctly arguing that medicine and physiology are outside his area of expertise. Defendants agree, and maintain that Mr. Lawrence's testimony will be limited to generally accepted law enforcement practices. Presumably he will address the specific question of whether Troopers Broad and Henderson adhered to these practices. The Court agrees that Mr. Lawrence's testimony should be limited to this subject and, if the limitation is observed, is admissible.

It is worth noting that Defendants specifically mentioned that Mr. Lawrence should be permitted to testify regarding the bases of his opinion. The Court assumes this means that Mr. Lawrence's opinion regarding the standard police procedures is based, at least in part, on information he has been given regarding positional asphyxia as a cause of sudden in-

5

custody death. Testimony offered to this effect will be treated as any other expert testimony about the basis of the experts opinion.

### Excited Delirium

There are two significant areas of excited delirium testimony at issue. The first is whether the phenomenon of excited delirium in general is admissible. The second is whether Dr. Vincent Di Maio's opinion that excited delirium caused Mr. Weigel's death is admissible.

There is little need to discuss the question of whether a general discussion of excited delirium in general is admissible. Both Dr. Di Maio and Dr. Cina agreed that excited delirium is widely recognized in the area of pathology. The development of this diagnosis, according to the exhibits submitted to the Court, is based on observation of subjects who generally display a particular suite of symptoms including erratic behavior, hyperthermia, and great strength. The condition has been observed in connection with various presumed causes, most frequently cocaine use, but also including several mental illnesses. The precise mechanism has been largely unknown, but researchers have recently observed a correlation between excited delirium and several biological markers. Ex. A (Mash et al. study).

As Plaintiffs point out, none of the supporting science involves a controlled experiment, that is, testing one variable against a control group in order to disprove a

6

hypothesis. This is not surprising, given the potentially great risk of harm to experimental subjects. Accordingly, the current understanding of excited delirium derives almost exclusively from a process of inductive reasoning. Although this process may, arguably, be less reliable than a controlled experiment, it is clear to the Court that no experimental alternative is realistically available.

In summary, given the documented history of observed symptoms of excited delirium, the undisputed testimony from both witnesses that it is generally accepted in the field of pathology, and documented connection between excited delirium and certain biological characteristics, the Court finds that the phenomenon meets the requirements of Rule of Evidence 702 and *Daubert*. Testimony regarding excited delirium will not be excluded as unreliable.

The issue of Dr. Di Maio's diagnosis of Mr. Weigel presents a closer question. As Plaintiffs argued in closing, Dr. Di Maio essentially diagnosed Mr. Weigel of schizophrenia that developed shortly before his death. Dr. Di Maio then testified that Mr. Weigel's schizophrenia was the precipitating cause of Mr. Weigel's excited delirium. Defendants contend that Dr. Di Maio's underlying claim—that Mr. Weigel was exhibiting symptoms of schizophrenia—was without foundation because he failed to use the diagnostic criteria set forth in the *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Text Revision

(DSM-IV-TR).

As an initial matter, it is worth noting that the testimony from both Dr. Di Maio and Dr. Cina indicated that pathologists routinely rely on reports by observers of the circumstances of a death when determining the cause of that death. Whether Dr. Di Maio was correct regarding Mr. Weigel's schizophrenia, the fact remains that he relied upon reports of some erratic behavior in the days leading up to the death, and used that information to draw his conclusion. Plaintiffs may have several arguments regarding why Dr. Di Maio is incorrect in his conclusion, but those arguments relate to credibility more than admissibility. Plaintiffs are free to reprise them before the jury.

### Positional Asphyxia

Defendants claim that the current state of the research on positional asphyxia shows that it is impossible that Mr. Weigel's breathing was sufficiently restricted to be a cause of his death. For support, they present various studies in which test subjects were placed prone, sometimes restrained, or with and weights up to 225 pounds placed on their backs. In some experiments, the subjects exercised beforehand. The Court need not discuss the specific details and results of each experiment. It is sufficient to note that the research indicated that in no tested condition were the subjects affected to the degree that their ability to oxygenate their blood was compromised. In other words, their ability to breathe was sometimes reduced,

8

but their bodies were receiving sufficient oxygen. Dr. Chan—who conducted several of these studies with his colleagues—hypothesized that the reason was that human respiration has a great deal of reserves, so even significantly taxing a person's respiration will not generally prevent a person from supplying the body with adequate oxygen.

The difficulty is that none of the experiments cited purport to replicate the conditions of an actual struggle and arrest in a subject like Mr. Weigel. Dr. Chan, during his testimony and in his published research, explicitly acknowledges that the two situations are not comparable. Mr. Weigel had been in a collision with a Highway Patrol vehicle, was confronted by two Troopers, had been struck by a moving vehicle, attempted to flee, may have been afflicted with excited delirium, and when tackled, engaged in a powerful struggle. The experiments conducted in controlled circumstances simply cannot stand for the proposition that the restraint imposed by the troopers could not have restricted his breathing to such a degree that it contributed to his death.

Having found Defendants' reasoning regarding the science to be flawed, the Court is left with the question of whether Dr. Cina's expert testimony is otherwise sufficiently reliable to be admitted. The Court finds that it is.

Dr. Cina testified that he arrived at his conclusion of mechanical asphyxia after ruling out other potential causes of death. 2 Trans. at 180. This is precisely the

technique—differential diagnosis—that Dr. Di Maio used to conclude that Mr. Weigel died as a result of excited delirium. 1 Trans. at 47. The Court infers, then, that this diagnostic technique is considered reliable in the field of pathology. The fact that they arrived at different conclusions does not mean that the testimony of either expert should be excluded. As the Court of Appeals for the Third Circuit has stated, proponents of expert testimony "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994) (emphasis in original).

## Conclusion

The Court finds by a preponderance of the evidence that the expert testimony of Dr. Di Maio, Mr. Lawrence, and Dr. Cina are all sufficiently reliable to satisfy the requirements of Rule of Evidence 702 as well as *Daubert* and its progeny. In addition, as Defendants' motion for summary judgment depends on grant of their *Daubert* motion to exclude Plaintiffs' expert testimony, the Court finds that genuine issues of material fact remain and summary judgment is not appropriate. Accordingly:

IT IS ORDERED that Defendants' *Motion to Strike Expert Witnesses* and *Motion for Summary Judgment*, Docket No. 100, is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' *Motion to Exclude Portions of the Testimony of Christopher Lawrence*, Docket No. 101, is DENIED.

IT IS FINALLY ORDERED that Plaintiffs' *Motion to Exclude Testimony of Vincent Di Maio, M.D.*, Docket No. 102, is DENIED.

Dated this $\underline{15^{th}}$ day of March, 2010.

ALAN B. JOHNSON
UNITED STATES DISTRICT JUDGE